UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Jeffrey T. Piampiano, Ch. 7 Trustee
of the Estate of Sky-Skan Inc.

     v.                           Case No. 22-cv-003-SE
                                      Opinion No. 2023 DNH 139
Stuart B. Ratner and
Stuart B. Ratner, P.C.

ORDER

New Hampshire Rev. Stat. Ann. ("RSA") § 508:4 includes a "discovery rule" that tolls the three-year statute of limitations for personal actions when the plaintiff could not reasonably have discovered his injury or its causal relationship to the acts or omissions that led to his injury. The discovery rule does not, however, allow an otherwise time-barred action when the plaintiff ignored his potential injury and made no reasonable effort to discover the acts or omissions that led to it.

In this case, the Chapter 7 Trustee for Sky-Skan Inc., Jeffrey T. Piampiano (the "Trustee"), brings malpractice and breach of fiduciary duty claims against Sky-Skan's former lawyer, Stuart Ratner and Stuart Ratner, P.C. (collectively, "Ratner").[1] The claims arise out of Ratner's alleged failure in

---

[1] The Trustee alleges that Ratner was Sky-Skan's attorney at all relevant times. Ratner does not dispute this fact for the purpose of summary judgment. Doc. no. 11-1, ¶ 19.

October and November 2017 to inform Sky-Skan that the Internal Revenue Service had granted a crucial extension related to its federal tax debts. Sky-Skan's mistaken belief that the IRS had not granted the extension allegedly caused it to file for bankruptcy and suffer harm.

Because Ratner's actions and Sky-Skan's bankruptcy filing occurred more than three years before the Trustee asserted the claims in this suit, those claims are barred by RSA § 508:4 unless the statute of limitations is tolled. The Trustee argues that the discovery rule applies because Sky-Skan reasonably expected Ratner to notify it if the IRS granted the extension, which would have prevented bankruptcy.

That argument misunderstands the discovery rule. Even if Sky-Skan reasonably assumed that Ratner would convey any updates regarding the extension, that does not save the Trustee's claims from the statute of limitations. Rather, the discovery rule applies only if Sky-Skan could not have reasonably discovered the extension. As discussed further below, there is no allegation or evidence to support that contention. Therefore, the discovery rule does not apply. For this reason, and because the Trustee's argument regarding fraudulent concealment is unavailing, the Trustee's claims are time-barred, and the court grants Ratner's motion for summary judgment (doc. no. 11).

Standard of Review

Granting summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "carries with it the potential to affect the outcome of the suit." French v. Merrill, 15 F.4th 116, 123 (1st Cir. 2021) (quotation omitted). A material fact is in genuine dispute if "a reasonable jury could resolve the point in the favor of the non-moving party." Id. In considering a motion for summary judgment, the court may review materials cited in the motion and other materials in the record. Fed. R. Civ. P. 56(c)(1)(3).

Background

Steven and Virginia Savage owned and operated Sky-Skan, which "was in the business of systems integration for theater systems and planetariums." Doc. no. 15-1, ¶ 1. To fund the business, Sky-Skan had taken out loans worth $1,040,000 from Bank of America, N.A. Those loans were later sold to Coastal Capital, LLC ("Coastal"), who acquired distressed assets.

In the months following Coastal's purchase of the Sky-Skan debt, the parties corresponded regarding the potential terms on which Sky-Skan would repay Coastal. Sky-Skan was experiencing financial difficulties and could not immediately pay Coastal

what it owed. On August 17, 2017, Coastal filed an action
against Sky-Skan in New Hampshire state court seeking to attach
its assets because Richard Gleicher, Coastal's member-manager,
had lost faith in the Savages. On September 22, 2017, the state
court issued an order granting Coastal's attachment.

In addition to its loan debt, Sky-Skan owed the IRS
$751,428. Prior to Coastal's state court action, Sky-Skan had
retained an IRS-credentialed agent to help resolve its unpaid
federal tax liability. That agent negotiated an offer-in-
compromise ("OIC") with the IRS that would have allowed Sky-Skan
to resolve its tax liability for $185,618. The deadline for Sky-
Skan to agree to the OIC was October 23 or 24, 2017.[2] A condition
of the OIC was that Sky-Skan would immediately pay a deposit
equal to 20 percent of the total compromised amount.

Given the state court order attaching Sky-Skan's assets,
the Savages sought approval from Coastal to pay the deposit to
the IRS pursuant to the OIC. Coastal was not willing to approve
that payment without additional information. Consequently, Sky-
Skan did not accept the IRS's offer prior to the October 23 or
24 deadline. However, Coastal notified Sky-Skan that it was
retaining a tax expert, Ratner, to help it better understand the

_____

[2] The parties agree that the OIC deadline was either October
23 or 24, 2017. See doc. no. 11-1, ¶ 54; doc. no. 15-1, ¶ 4.

merits of the OIC and for the express purpose of seeking an
extension of the already-expired IRS deadline to fund the OIC.

In order to facilitate Ratner's efforts, on October 27,
2017, Virginia Savage signed an IRS "Power of Attorney and
Declaration of Representative" form, which gave Ratner power of
attorney for Sky-Skan before the IRS.[3] Ratner also spoke with Ms.
Savage and informed her that he would seek a 30-day extension
from the IRS for the parties to consider the OIC further. She
testified in her deposition as follows:

> Q:   Did Mr. Ratner indicate to you a possibility of
> getting an extension relative to the offer in
> compromise addendum?
>
> A:   He mentioned that, but at that point we were
> already past the deadline . . . for the offer in
> compromise."
>
>        . . . .
>
> Q:   [W]as it your understanding that among the things
> he was going to request from the IRS would be a
> further extension of that already lapsed deadline
> under the offer in compromise addendum?
>
> A:   Yes, I believe so.

Doc. no. 11-2 at 9-10.

On that same day, October 27, 2017, Ratner spoke with the
IRS agent who was handling the Sky-Skan OIC. That agent told
Ratner that the IRS would grant the requested extension through

---

[3] The form gave both Stuart Ratner and his associate, Laura
Rodriguez, power of attorney. See doc. no. 15-15.

November 30, 2017.[4] Ratner did not notify the Savages or anyone
else at Sky-Skan that the IRS had granted the extension, either
on October 27 or at any time thereafter. No one from Sky-Skan,
including its bankruptcy attorney, inquired with Ratner or the
IRS regarding the status of the extension.

On November 1, 2017, having not heard from Ratner and
assuming he would have reached out had his efforts with the IRS
been successful, Sky-Skan filed for bankruptcy. According to its
bankruptcy attorney, Sky-Skan's unresolved tax obligation was a
"major factor" that led it to file. Doc. no. 15-3, ¶ 7. Sky-
Skan's bankruptcy attorney believed that, in the absence of a
final OIC, the IRS would likely take over the business and
liquidate its assets. Id.

The IRS sent a fax to Ratner on November 2, 2017, formally
extending the OIC to November 30. Ratner did not notify the
Savages or anyone at Sky-Skan about the fax. Subsequently, due
to Sky-Skan's bankruptcy filing, the IRS sent Sky-Skan a notice
on December 4, 2017, stating that the OIC had been terminated.
The notice did not indicate that the OIC had previously been
subject to an extension beyond the October 23/24 deadline. Sky-
Skan's estate ultimately settled with the IRS for $491,952. Sky-

---

[4] Ratner also negotiated a change to the terms of the OIC.
Sky-Skan would make a lower one-time payment rather than a 20
percent deposit of the total amount followed by monthly
payments.

Skan later learned of the extension during a March 5, 2019
bankruptcy deposition of the IRS agent who handled the OIC. Doc.
no. 15-1, ¶ 49.

The Trustee sued Ratner on August 13, 2021 – nearly four
years after the expiration of the OIC – seeking damages for
claims of negligence/legal malpractice and breach of fiduciary
duty. Ratner moves for summary judgment on those claims. The
court held a hearing on Ratner's motion on September 13, 2023.

## Discussion

The Trustee claims that Ratner breached his duty to Sky-
Skan when he failed to notify it that the IRS agreed by phone on
October 27 and in writing on November 2 to grant it an extension
through November 30 to consider the OIC. Had Sky-Skan known of
the extension, the Trustee argues, it either would not have
filed for bankruptcy or would have withdrawn its then-recently
filed bankruptcy petition. And, even if Sky-Skan did not or
could not withdraw its bankruptcy petition, its estate would
have benefited from settling with the IRS for the OIC amount.
According to the Trustee, Ratner's silence caused Sky-Skan to
incur significant costs and losses related to the bankruptcy.

Ratner argues that, even assuming he committed the alleged
breaches, his purported unlawful actions did not cause Sky-Skan
any injury. Ultimately, the court need not determine Ratner's

liability because the Trustee's claims are time-barred and not subject to any tolling doctrine.

I.    Statute of Limitations

Under New Hampshire law, which applies to this diversity action, a plaintiff must bring claims alleging malpractice and breach of fiduciary duty within three years of the alleged act or omission giving rise to the claims. Feddersen v. Garvey, 427 F.3d 108, 112 (1st Cir. 2005) (citing RSA § 508:4); Beane v. Dana S. Beane & Co., 7 A.3d 1284, 1290 (2010). In this case, the alleged act or omission constituting malpractice and breach of fiduciary duty is Ratner's failure to inform Sky-Skan that the IRS extended the OIC deadline through November 30, 2017. Therefore, for the purpose of calculating the three-year limitation period, the act or omission complained of occurred no later than November 30 - the final day of the IRS extension.

In his summary judgment papers, the Trustee does not offer any argument or evidence to contradict this conclusion or provide an alternative date on which the limitation period began to run, absent application of a tolling doctrine. At the conclusion of oral argument, however, the Trustee argued for the first time that his claims were timely because Ratner's actions constituted a continuing violation — that is, Sky-Skan continued to be injured throughout the bankruptcy proceeding because it

could have dismissed the proceeding at any point had Ratner
informed it of the extension. Because, as the Trustee conceded,
the issue had not been briefed, the court did not permit
extended argument and will not dwell on it here. Suffice it to
say that the continuing violation doctrine is plainly
inapplicable to the undisputed facts of this case, which
establish that any violation of duty concluded at the expiration
of the extension on November 30, 2017. See Singer Asset Finance
Co. v. Wyner, 156 N.H. 468, 478 (2007) (A "claim based on a
single tort ordinarily accrues when the tort is completed, and
the continuing accrual of injury or damages does not extend the
accrual date." (quotation omitted)).

Because the three-year limitation period began to run on
November 30, 2017, the Trustee was required to file his claims
on or before November 30, 2020. He filed his complaint on August
13, 2021, well beyond the expiration of the limitation period.[5]
Thus, the burden falls on the Trustee to prove that an exception
applies to toll the statute of limitations. Feddersen, 427 F.3d
at 112. The Trustee argues that the statute of limitations

---

[5] The parties entered into an agreement tolling any
available causes of action from May 26, 2021 to August 20, 2021.
Doc. no. 15-1, ¶¶ 50-51. Because the limitation period for the
instant causes of action expired prior to the effective date of
that agreement, it is not relevant to the court's analysis.

should be tolled under either the discovery rule or the doctrine of fraudulent concealment.

### A.   Discovery Rule

Section 508:4 provides a discovery-rule exception to the statute of limitations "when the injury and its causal relationship to the act or omission were not discovered and could not reasonably have been discovered at the time of the act or omission." RSA § 508:4, I. If the discovery rule applies, then "the action shall be commenced within 3 years of the time the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the injury and its causal relationship to the act or omission complained of." Id.

The Trustee asserts that, under the discovery rule, the three-year limitation period did not begin to run until the March 5, 2019 deposition of the IRS agent who handled the Sky-Skan OIC. The Trustee's argument, however, misapprehends the statute. As stated above, RSA § 508:4 tolls the three-year limitation when "the injury and its causal relationship to the act or omission were not discovered and could not reasonably have been discovered at the time of the act or omission." Thus, it is not enough that Sky-Skan did not actually discover Ratner's alleged breaches until the March 5, 2019 deposition. Rather, the Trustee must also show that Sky-Skan could not

10

reasonably have discovered them. As discussed below, the undisputed facts demonstrate the opposite.

Although the determination of whether the discovery rule applies usually turns upon a question of fact, it does not on this record. The Trustee offers no evidence that Sky-Skan would have been unable to determine that Ratner had failed to disclose that he had obtained the OIC extension had it made any effort to do so. He concedes that Sky-Skan did not attempt to inquire about the status of the OIC extension with either Ratner or the IRS. Further, he does not allege that either Ratner or the IRS would have refused to divulge the existence of the extension to the company or to bankruptcy counsel prior to filing had Sky-Skan inquired. Indeed, there is evidence in the record that Sky-Skan's bankruptcy counsel had been advised by its prior IRS-credentialed agent that the company could call the IRS on its own behalf to inquire about the OIC. Doc. no. 11-42.

Instead, the Trustee argues that "Sky-Skan was reasonable in assuming that if there had been anything to report on the extensions that [Ratner] would have reported it to them." Doc. no. 15-1 at 18; see also id. at 20 ("Although the Defendants attempt to shift the blame for their inaction to the Plaintiff, a jury could determine that it was reasonable that the Savages did not call the IRS directly and that [Sky-Skan's bankruptcy attorney] did not contact the IRS, since the Defendants, tax

11

specialists, had been actually engaged."); id. at 2 ("A jury could find that Sky-Skan had acted reasonably and was not required to undertake further inquiry into the Defendants' actions."). In sum, the Trustee attempts to argue that, on the one hand, the lack of an OIC extension was a "major factor" that led Sky-Skan to declare bankruptcy, but on the other hand, Sky-Skan acted reasonably when it made no effort whatsoever to ascertain the status of this critical extension before filing for bankruptcy.

Even if Sky-Skan's failure to take any action to confirm the existence of the OIC extension prior to filing for bankruptcy could constitute "reasonable diligence" — which it could not — that is simply not the standard for the discovery rule to apply. "[T]he discovery rule exception does not apply unless the plaintiff did not discover, and could not reasonably have discovered, either the alleged injury or its causal connection to the alleged negligent act." Perez v. Pike Indus., Inc., 153 N.H. 158, 160 (2005) (emphasis added). Only if the plaintiff makes this showing does the court then consider when, in the exercise of reasonable diligence, the plaintiff should have discovered his injury and the causal connection to the defendant's act or omission. The Trustee, however, leapfrogs the initial question and argues only that Sky-Skan's inaction was reasonable. Although required by the statute, he offers no

12

evidence that could allow a jury to conclude that Sky-Skan could not reasonably have discovered the existence of the OIC extension, which he must do at this stage to avoid summary judgment.[6]

At the hearing, the Trustee raised a new argument in favor of applying the discovery rule. Viewing the argument generously, the Trustee contends that Sky-Skan was unaware that Ratner would be negotiating with the IRS because Ms. Savage never spoke to him. Thus, Sky-Skan had no basis to make any effort to determine whether Ratner's efforts were successful. This argument fails for at least three reasons.

First, the Trustee did not include this argument in his summary judgment papers and instead raised the issue for the first time at the hearing. He offered no reason to depart from

---

[6] To the extent that the Trustee intended to argue that a plaintiff's "reasonable diligence" is all that is required for application of the discovery rule in RSA § 508:4, that argument is in direct conflict with the statute's plain language. Indeed, as it did in the former version of another section of Chapter 508, the New Hampshire legislature could have omitted the "reasonably could have discovered" language entirely. See RSA § 508:4-g, II (amended 2020) (requiring only that a plaintiff commence a personal action within "[t]hree years of the time the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the injury and its causal relationship to the act or omission complained of"). It did not do so, and the court must give effect to every part of the statute. See, e.g., Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992) (noting the "cardinal canon" of statutory interpretation is "that a legislature says in a statute what it means and means in a statute what it says there").

the familiar rule that, "'except in extraordinary circumstances,
arguments not raised in a party's initial brief and instead
raised for the first time at oral argument are considered
waived.'" Lieber v. Marquis Mgmt., LLC, No. 1:21-CV-968-JL, 2023
WL 5646079, at *13 n.69 (D.N.H. Aug. 31, 2023) (quoting
Conduragis v. Prospect Chartercare, LLC, 909 F.3d 516, 518 n.2
(1st Cir. 2018)).

Even if the court did consider the argument, it would not
carry the day. The record evidence demonstrates not only that
Ms. Savage and Ratner spoke about him representing Sky-Skan
before the IRS in October 2017, but also that she was
specifically aware that Ratner would be seeking an extension of
time for Sky-Skan to complete an OIC. Gleicher informed Ms.
Savage and Sky-Skan's bankruptcy attorney on October 23 that
Coastal was "hiring a tax specialist" and that he would speak to
the IRS agent to explore "the possibility of getting a short
extension . . . without jeopardizing your current deal." Doc.
no. 11-38 at 1. Ms. Savage emailed Ratner and others on October
26 with the subject line "Sky-Skan – IRS OIC," offering to give
Ratner power of attorney so that he could "talk to the IRS about
our case." Doc. no. 11-45 at 1. As described above, Ms. Savage
testified that she also spoke with Ratner about his plan to seek
an extension to consider and fund the OIC. Doc. no. 11-2 at 9-
10. Ratner sent an email to Gleicher on October 27 confirming

14

that he "spoke[] with Virginia," doc. no. 11-45 at 1, and Ms.
Savage signed the IRS "Power of Attorney and Declaration of
Representative" form on that same date. Ratner also states in
his affidavit that he spoke to Ms. Savage and told her that he
would be seeking a 30-day extension for the OIC. Doc. no. 11-14,
¶ 10.

Despite this record evidence, the Trustee argued at the
hearing that there is a dispute as to whether Ratner ever spoke
to Ms. Savage. The Trustee's argument is based upon a single
statement made by Ratner in a bankruptcy deposition on January
3, 2020. When asked whether he had ever spoken to Ms. Savage,
Ratner answered: "Not that I can recall." Doc. no. 15-13 at 5.
That single statement, which is belied by contemporaneous
emails, Ms. Savage's own testimony (which she does not dispute
or abandon), and Ratner's affidavit, "is insufficient to give
rise to a genuine factual dispute in light of the overwhelming
evidence, identified in the motion for summary judgment,"
showing that Ratner spoke to Ms. Savage in October 2017. Jones
v. Secord, No. 10-CV-146-PB, 2011 WL 1557883, at *1 n.2 (D.N.H.
Apr. 26, 2011), aff'd, 684 F.3d 1 (1st Cir. 2012); see Scott v.
Harris, 550 U.S. 372, 380 (2007).

Even if there were a dispute of fact on this issue, and
even if the Trustee had not waived it, the Trustee's argument
would fail for a third reason: a dispute over whether Ms. Savage

and Ratner actually spoke is not material. The Trustee does not
dispute — nor could he — that Ms. Savage emailed Ratner on
October 26, 2017 about him representing Sky-Skan before the IRS.
And the Trustee acknowledges that the following day Ms. Savage
gave Ratner power of attorney to represent Sky-Skan before the
IRS. In other words, the Trustee concedes that Ms. Savage
authorized Ratner to negotiate with the IRS on Sky-Skan's behalf
and was aware that he would be doing so. Thus, regardless of
whether Ms. Savage and Ratner spoke, the Trustee does not point
to any evidence to show, or even to suggest, that Sky-Skan could
not reasonably have discovered the results of Ratner's
discussion with the IRS and the existence of the OIC extension
prior to November 30, 2017.

The court notes that the Trustee's argument that Sky-Skan
was not obligated to take any affirmative action may be well-
founded as to Ratner's liability for breaching his duty to his
client, Sky-Skan. But, given that this suit was filed nearly
four years after the alleged injury, the Trustee is required to
show more than a dispute of fact as to whether a breach
occurred. To take shelter in the discovery rule, he must
demonstrate a dispute of fact as to whether Sky-Skan could
reasonably have discovered the breach or its injury. He has
failed to do so. On this record, the court concludes that the

16

Trustee's claims are not timely by application of the discovery rule.

### B.   Fraudulent Concealment Doctrine

The Trustee also argues that the fraudulent concealment doctrine should toll the three-year statute of limitations. A plaintiff's burden under the fraudulent concealment doctrine is to "present some evidence of an affirmative act on the part of the defendant to conceal or cover up the underlying wrongful conduct that gave rise to the plaintiff's asserted injury." Maggi v. Grafton Cnty. Dep't of Corr., 633 F. Supp. 3d 508, 516 (D.N.H. 2022). Moreover, the affirmative act must be designed to prevent, and must actually prevent, the discovery of the fact giving rise to the cause of action. Sykes v. RBS Citizens, N.A., 2 F. Supp. 3d 128, 143 (D.N.H. 2014). The Trustee asserts only that Ratner engaged in a "deliberate cover up . . . because the Defendants failed to ever communicate with Sky-Skan" but "actually communicated the extension to Coastal[.]" Doc. no. 15-1 at 19-20. The Trustee does not explain how the act of informing Coastal supports any allegation that Ratner worked to conceal or cover up his failure to communicate the IRS's extension to Sky-Skan. And, for the reasons discussed above, there is no evidence to suggest that Ratner's silence prevented Sky-Skan from discovering the existence of the extension. No

reasonable juror could find that informing Coastal of the extension supports the application of the fraudulent concealment doctrine.

### C.   Summary

There is no dispute that the Trustee filed his claims after the expiration of the three-year limitation period. The Trustee points to no evidence that could support the application of the discovery rule or the fraudulent concealment doctrine. Therefore, his claims are time-barred.

## II.   Causation

Because the court determines that the Trustee's claims are time-barred, it need not address Ratner's arguments regarding causation.

## Conclusion

For the foregoing reasons, the defendants' motion for summary judgment (doc. no. 11) is granted. The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Samantha D. Elliott
United States District Judge

November 6, 2023
cc: Counsel of Record.